The opinion of the Court was delivered by
Todd, J.
The plaintiff, the wife of Theophile Harang, Sr., sues to recover a part of a plantation in the Parish of Lafourche, known as the “ Harang Plantation,” and to annul an act by which her said interest in the property was conveyed to Jules A. Blanc, one of the defendants.
Subsequently to the date of the said act sought tobe annulled, Blanc, sold the interest claimed by the plaintiff, to her son, Theophile Harang, Jr., on a credit, and had caused a writ of seizure and sale to issue, to enforce the special mortgage given to secure payment of the price. This writ was enjoined by the plaintiff, and Theophile Harang, Jr., and the Sheriff were made parties to the suit.
The plaintiff alleges as the ground of nullity of the act in question; that it was not a sale of her interest, as it purported to be, but an attempt to render her and her property responsible for the debts of her husband, and that she was informed, at the time of signing the act, that it was a mere formality intended “ to carry out a previous partition of the estate between her and her co-proprietors, and protect the property from seizure from outside parties.”
The defendant, Blanc, for answer, denied all the allegations of the petition, except that he had acquired the property by purchase and had sold it to Theophile Harang, Jr., and caused executory process to issue against it, as charged; that plaintiff knew of the sale in question, made by respondent, and recognized its validity, and that she and her husband had likewise acknowledged the validity of his (respondent’s) *633 title to the land. The case was tried on these issues, and from a judgment-against her, the plaintiff has appealed. Theophile Harang, Jr., though cited, did not answer, nor was any default taken against Mm.
Before the date of the conveyance, referred to, to Jules A. Blanc, the defendant, the title of record to the “ Harang Plantation,” was in the names of Octave Harang, Pierre Desalles, Theophile Harang, Sr., and plaintiff, the wife of the last named, as co-proprietor, each being the' owner of one. undivided fourth of plantation. The plaintiff acquired her interest therein from D. Durac, on the 31st of March, 1868; and the money paid therefor is stated in the act of sale to have been received from plaintiff’s mother.
Subsequently, on the 5th of May, 1876, the plantation, by an act under private signature, was partitioned among the joint proprietors, by which the plaintiff, for her fourth, and Theophile Harang, Sr., her husband, for his fourth, received for their joint share what may be termed, according to the description given in the act, the upper part of the plantation.
By a public act, passed before a notary irablic of the Parish of Lafourche, dated on the 7th of May, 1876, but really passed and signed, as admitted, on the 7th of June, 1876, the several co-proprietors mentioned, conveyed their respective interests in the plantation to Jules A. Blanc, defendant; the conveyance embracing the entire Harang Plantation. This act is termed by the parties a sale, but on its face is a elation enpeiiement, for whilst it is stated that the price is $24,000 cash, it further declares that this sum is owing to the purchaser by the four vendors, on account of sundry mortgages and judgments against the parties, purchased by the said Blanc.
On the 29th of January, 1880, Mr. Blanc conveyed the upper part of this plantation — being the same part received in the partition by plaintiff and her husband, above mentioned — to Theophile Harang, Jr., and retained a mortgage for the stipulated price, for which he caused the executory process to issue, as before stated.
The main defense relied on by the defendant, Blanc, against the plaintiff's claim to the land is, that she never had a title to it, and that her pretended purchase from Durac was a purchase by the matrimonial community, of which her husband was the head. This question, touching plaintiff’s original title, cannot be a subject of controversy between these parties in this suit. As respects the interest in the land sued for by the plaintiff, the record shows that the sole title to it, possessed by the defendant, Blanc, is derived from plaintiff’s conveyance to him on the 7th of June, 1876, referred to. In that act, which he signed, and in which he accepts the conveyance, it is expressly *634 declared that the plaintiff is the owner of one undivided fourth of the plantation, and her title is specially referred to and acknowledged to have been acquired by her purchase from Durac, on the 31st of March, 1868, above mentioned. And in the same act, Theophile Harang, Sr., plaintiff’s husband, conveys his own separate fourth of the property, and authorizes plaintiff, as his wife, to convey her interest.
Plaintiff’s title to this interest had been previously repeatedly recognized in writing by this defendant.
Thus, in the sale by Octave Harang to said Blanc, on the 12th of May, 1875, of his interest in a canal and some swamp lands, the property sold was described to be a part of the Harang Plantation, one-fourth of which plantation the parties declared belonged to Mrs. Harang, the present plaintiff. And a like declaration is made in an act of the 31st of May of the same year, in which plaintiff and her husband conveyed to Blanc their respective interests in the same canal and swamp lands.
And again, among the very debts held by Mr. Blanc, and for which the conveyance to him purports to have been made, was a mortgage debt purchased of Louis Bush, evidenced by an act of mortgage given by plaintiff on this same separate interest of hers in the,plantation, as part of the price of her purchase thereof.
Plaintiff, it will thus be seen, is the author of the defendant, Blanc’s, title to this interest claimed by her in the present.suit, and so firmly settled is it in our jurisprudence, as to become elementary, that a party cannot gainsay or dispute the title of his author.
As was said by this Court:
“ If either the pleadings or evidence show'that the parties trace their titles to the same source, neither will be permitted to attack the title of their common author, and that a party cannot controvert the title of one under whom 'he claims.'’’1 15 A. 685, and authorities there cited.
So clear are our convictions on this point, that we cannot yield to the authorities referred to by the counsel for the defendant, derived from a different system than that prevailing in this State.
We do not mean to say, however, nor does the principle in question militate against the idea, that a purchaser from one party may supplement his title by buying up the titles of other claimants to the property. In this case the only title that defendant can assert to the property is that derived from the plaintiff. She sold it to him, and lie bought from her, and so declared in the deed. The husband did not join in the sale of this interest, but merely authorized his wife,to sell, and in the same act the defendant acknowledged that plaintiff was the owner of this interest and became the owner by her purchase from Durac.
*635 There is nowhere in the pleadings any pretense that these declarations and acknowledgments were made by this defendant in error, or were induced by fraud.
It is true, that if the husband of plaintiff were ever to claim this property, as belonging to the community, he would be estopped by this conveyance of his wife, made by his authority; and this is tire extent of the authority on this particular point, referred to by counsel.
It is also urged, that the plaintiff is estopped, by reason of her conveyance to defendant, and the declarations made in the acts from denying its truth and seeking its nullity. It has often been held, that where a married woman seeks to avoid an act, which she attacks upon the ground that it contravenes the provisions of a prohibitory law designed for her protection against marital influence, that the principle of estoppel, as usually recognized, is not applicable.
Thus, in the case of Chaffe vs. Oliver, administrator, 33 A. 1009, where a wife had conveyed her land to secure the debt of her husband, and the land had been reconveyed to her at a stipulated price, and a mortgage retained to secure it was sought to be enforced, the present Court used this language :
“It is settled, to epitomize our jurisprudence, that such transactions cannot be sustained; that the wife ail'd her legal representatives cannot-be bound thereby; that she may attack and annul them, or may defend against them; that she is not estopped by her own acts in aid of the transaction, which are presumed to be done under marital influence; that whatever the form of the contract, its true character may be inquired into and laid bare; and that in her assault upon even authentic acts, she is not confined -to counter letters and interrogatories on facts and articles, but may resort to parol evidence to establish their true nature and purpose.” Citing, 14 A. 169; 16 A. 11; 5 A. 572; 2 A. 756; 12 A. 852; 12 R. 84; 1 A. 429; 4 R. 508.
In the case of Bisland vs. Provosty, 14 A. 169, among those cited, a husband mortgaged certain property, the wife joining in the act, and affirmed that the title of the property was in the husband, and renounced all rights to the same, yet it was held that she might sue for and recover the property.
In the act of conveyance to the defendant, Blanc, of the Harang Plantation, it is recited that he was the holder of claims against the proprietors of the plantation to the amount of about $40,000, which were valued at $24,000. Among all these debts, the only one we' find for which the plaintiff at the time was liable, was the mortgage debt for part of the price due by her on her purchase from Durac, above mentioned, originally for $2,684, on which there was a balance due, according to our estimate, of $617.27, at the time it was acquired by *636 Mr. Blanc, on the 8th of February, 1875. It is true that among the other debts were obligations signed by her with her husband, and the other co-proprietors of tho plantation, but as she could not bind liorself for her husband, nor conjointly with him, as urged by her, we cannot recognize them as valid dobts against her. C. C. 2398; 16 A. 311.
It is, however, contended by plaintiff’s counsel, that this debt was extinguished by compensation, by the amount that Mr. Blanc became indebted to her on account of his purchase of her interest in the swamp lands and tho canal. This is not made clear by the evidence, and we must resolve the doubt against her,- since the burden of tho proof is upon her. It is also asserted that, if not' thus extinguished, that the charges of usurious’interest and commissions alleged in tho accounts of the defendant, Blanc, should be disallowed, to an amount sufficient to balance her debt in question. With this plaintiff has nothing to do. She is not charged with these items, and the accounts containing them have been accepted by Theophile Harang, Sr., her husband, and other parties, and they are not open to inquiry in this suit.
This debt of the plaintiff, though not extinguished, cannot be viewed as constituting a price for her interest in the plantation. For the entire property the price was stipulated at $24,000, and plaintiff’s share of the same would be $6,000, nearly ten times the amount of tho consideration she received; that is, tho debt for which she was liable.
An attentive examination of the evidence in the record, however, satisfies us, that though, on the face of it, the conveyance in question is manifestly a giving in payment, as stated, yet the real purpose and object of it was to afford Mr. Blanc what he deemed a better security for the debts held by him against the plantation or its proprietors.
For instance, the relative position of the parties to this instrument is not changed after its execution, The vendors still remain iu possession for several years, and continue to cultivate the plantation, and tho defendant to assist them by advances, etc. And how, except in this hypothesis, can we explain or construe the letters of the defendant on this subject 1 In a letter written on the 26th of May, 1876, and in which was enclosed the act which was subsequently signed on the 7th of June, conveying the plantation to him, and addressed to Octave Harang, occur these expressions, written in French, which we translate:
“After my return iu October or November, I will proceed to free the property from the mortgages and judgments which now encumber it, and will sell one-half to each one, as we have agreed.” * * • “ I wish it well understood and agreed, that the notes and mortgages you shall give me for the purchase of the property, shall be mine, full and complete, until I am paid, as we have agreed.”
“I am thus particular in explaining myself before leaving, to the *637 end that should an accident befall me, my heirs knowing what they should do when they find your property in my name. Take care of this letter, which will be your protection in case of accident.”
P. S. “Let Theophile understand his position with you, and if you are. satisfied — -you two — we have but to sign the act.”
In another letter he urges Theophile to pay his part of the taxes on the property.
Again, he says, in a letter to Octave: “ If Theophile will and can pay me to-morrow all he owes me, I will return to him all his notes judgments, etc., and say to him, God speed you.”
And in another letter, written after the act of conveyance to him was prepared, but before it was signed, addressed to 0. Harang, after referring to a proposition from Theophile, about the adjustment of his indebtedness, he says: “ I would wish, in the meantime, that Theophile should understand that if, between .you two, you owe me $32,000 to $35,000, reduced to $8,000 or $9,000, in buying your debts at 25 to 30 cents on the dollar, with mortgage on the plantation, I would be better guaranteed in preserving my security on the whole plantation than in dividing it.”
Iu another letter, written in September, 1879, to Theophile Harang, he expresses a desire to close the business with him and Octave, and suggests a sale of a part of the plantation, commencing from the two ends, so as to leave to them a part of the place free from debt.
All this leaves no doubt that the object of the conveyance in question, was to secure the debts held by Mr. Blanc against the place. It might, be considered as an auteehresis, but that the debtors still retained possession, and therefore, it may, with more propriety, be viewed as a mortgage. This hypothecary right against plaintiff, and her interest in the plantation, does not extend beyond the amount of the debt for which, at that time, she was personally liable, and which is, in amount, as above stated. And she is not, on execution of the decree, entitled to avoid the contract assailed by her, except by first paying the amount of this debt and interest.
The plaintiff was not entitled to enjoin the sale of the one-half of the upper part of the plantation, on which she claims a mortgage, by reason of this mortgage, and to this extent her injunction was properly dissolved.
Our first impression was, that with the views expressed, we would have to remand the case, with a view to afford Theophile Harang, Jr., who was cited, and to whom a sale of the land was made by this co-defendant, Blanc, an opportunity to be heard, but considering Ms testimony in the record and his injunction suit against this same seizure, which is now before us on appeal, and submitted, wo are satisfied that it would be in vain thus to remand, for that purpose, as there is *638 evidently no issue between liim and the plaintiff, and, therefore, it is preferable to make a final disposition of the case.
The equities in favor of the defendant, Blanc, in his business dealings with these parties, are strongly urged in his behalf, and the conduct of plaintiff’s husband, in connection with the matters out of which this controversy has grown, is severely criticised. However this may be, we see nothing in the evidence, that connects plaintiff with anything that is censurable relating to these transactions, or that could affect or impair the inflexible rules of law upon which we base mu-decision.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered, it is ordered, adjudged and decreed, that the plaintiff be, and she is hereby declared owner of the undivided one-half of the upper part of the Harang Plantation, as described in the petition, and that she be put in possession of the same on paying to the defendant, Jules A. Blanc, the sum of six hundred and seventeen dollars and seventy-three cents, with eight peleen t. interest per annum thereon, from the 8th of February 1875, and that the contract attached, entered into on the 7th June 1876, and dated on May 7, 1876, be annulled as to the plaintiff, and so far as it purports to convey her said interest in the Harang Plantation ; and it is further ordered, adjudged and decreed, that the plaintiff’s injunction, so far as it seeks to restrain the sale of the part of said plantation herein claimed by her as owner, be perpetuated, but so far as it enjoins the sale of the part on which she claims a mortgage, that it be dissolved; defendant, Jules A. Blanc, to pay the costs of both Courts.
Mr. Justice Poché recuses himself, having been consulted as counsel.
Levy, J., absent.